MORRIS AND ESSEX RAILROAD COMPANY and DELAWARE, LACKAWANNA AND WESTERN RAILROAD COMPANY

*v.*

NEWARK PASSENGER RAILWAY COMPANY.

1. Equity will not enjoin an unauthorized obstruction in a public highway at the instance of a private person, corporate or natural, who does not suffer some special damage from it, differing in kind from the damage which such person sustains merely as a member of the community ; and, within this rule, a railroad company, though it does public service, stands substantially upon the footing of a private individual.

2. Such special damage is not suffered by a steam railway company which does not own the land in the highway, but has merely the right to operate its road across the highway at grade, through the establishment in the highway of a street railway, the motive power of which is electricity supplied by means of wires elevated a sufficient height to admit the free passage of the cars of the steam road thereunder.

3. The meaning of the seventh section of the charter of the defendant company (*P. L. of 1874 p. 1197*) defined.

On order to show cause why a preliminary injunction shall not issue.

*Messrs. J. Flavel McGee* and *Joseph D. Bedle,* for the complainants.

*Mr. Edward Q. Keasbey,* for the defendant.

THE CHANCELLOR.

The complainants operate a trunk line railroad from the city of New York to the west, which crosses the State of New Jersey.

It passes through the city of Newark, crossing Clifton avenue, formerly Chatham street, at grade. At that point Newark is populous, and consequently the travel upon Clifton avenue, at the crossing, both by foot passengers and vehicles, assumes very considerable proportions.

The defendant has laid street railway tracks along Clifton avenue to the complainants' railway, both on its northerly and southerly sides. Its purpose is to cross that road with its street railway, operated by electricity, under what is known as the trolley system.

The complainants seek to enjoin the proposed crossing.

It is established beyond controversy, that equity will not enjoin an unauthorized obstruction in a public highway at the instance of a private person, who does not suffer some special damage from it, differing in kind from the damage which such person sustains simply as a member of the community. In absence of such special damage, an injunction will be granted only upon the application of the public authorities, the attorney-general or a municipality having charge of the highways. In other words, a private individual, corporate or natural, has standing to invoke the aid of equity only when he, she or it suffers special injury from an obstruction in the highway, of a kind which does not appertain to all persons who may lawfully use the highway. A railroad company, though it does public service, stands substantially upon the footing of a private individual. The complainants show, in themselves, merely the right to cross Clifton avenue, a previously existing public highway, in such a manner as shall preserve to the public the use of the street. They do not show that they are the owners of the fee in the land in the highway. Their right, so far as appears, is subject to the use of the highway for all the purposes to which any highway may lawfully be put. It is only a servitude of the highway, then, which is wholly foreign to its character, and, also, unreasonably obstructive to the complainants' crossing, that can do special injury to their right. It has been repeatedly held, in this state, that a horse railway in a highway is not such an additional servitude, and the current of the decisions throughout

the country goes in the direction that where the motive power of a street railway is electricity, the servitude is not additional. If the authority of such decisions be questioned, that fact will not avail the complainants upon this application for preliminary injunction, for, in such case, the law upon which their claim depends will, at best, be unsettled, and their right, therefore, will not be clear.

The only suggestion of other obstruction to the complainants' special right than the use of the street by electric cars, is that the overhead trolley wire may be placed low and the poles which are to sustain it may be planted in the complainants' right of way, which is subject to the public easement, in such manner as to obstruct the free operation of its railway. The answer denies that the wire will be so low or that the poles will be so placed that the full enjoyment of the complainants' right of way will be at all interfered with. The answer is responsive upon this point and must control in the present application.

The proposed use of the street, then, by the defendant, does not appear to be one which the complainants have a standing to prevent, and this, even though the defendant does not show authority at law to maintain that use.

In resisting the complainants' attack, no special injury being shown, the defendant is not obliged to exhibit its power and authority.

The complainants next insist that, under the seventh section of the charter of the Essex Passenger Railway Company, which the defendant claims is consolidated into its legal powers and duties (*P. L. of 1874 p. 1197*), the defendant cannot cross another railroad except by agreement with the latter company.

I do not so construe the section in question. Its language is as follows:

"That the said company shall have the right to cross at grade *any railroad* in the county of Essex, and also to connect their railroad with that of any *other passenger railway company* for the purpose of completing a route or making a circuit, upon such terms and condition as may be agreed on by *such other company or companies* and the said Essex Passenger Railway Company."

The claim is that the two rights thus conferred—to cross at grade and to connect for the purpose of making a circuit—separated, as they are, by commas, both refer to the last clause of the sentence relating to agreement. I cannot assent to this interpretation of the legislative meaning. I think that the conjunction "also" is used to commence a new subject in the enumeration of powers and pronouncedly disconnect it from the subject previously dealt with. Besides, it is perceived that when the subject of crossing is dealt with, the power to cross "*any railroad*" is given without reference to the ownership of such road, but when the power to connect is given, it is expressed to be to connect with the railway of "*any other passenger railway company.*" The only reference made in the statute to another railway company than the Essex Passenger Railway Company is in speaking of the owner of a railway with which it may connect. It is after the constitution of this prefatory situation that the requirement for agreement with "*such* other company" is imposed; that is, agreement with the company of the particular character specified—one to be connected with.

It evidently was the design of the statute considered not to limit and restrict, but, as far as possible, to extend the powers of the horse railway company.

I will discharge the order to show cause heretofore granted and deny the injunction asked for.